## Costs in Liquor Control Board Cases

398

RENO, Attorney General, November 13, 1939. — We have your request to be advised concerning whether the Pennsylvania Liquor Control Board is liable for court costs arising from litigation involving the board.

At the outset, it must be noted that the right to recover costs depends entirely upon statute. In Cooper's Estate, 97 Pa. Superior Ct. 277, 279 (1929), the rule is set forth as follows:

"Statutes relating to costs are strictly construed. Hoover v. Sch'l Dist., 4 Pa. C. C. Rep. 520; In re Braintrim Sch'l Dist., 23 Pa. C. C. Rep. 510; Arnold v. McKelvey, 26 Pa. Dist. Rep. 717; Stewart v. Baldwin, 1 Penrose & Watts 461; Stillwell v. Smith, 17 Pa. Dist. Rep. 502; Lewis v. England, 4 Binney 13. *To recover costs requires a statute specifically granting such right.* In re Beassler, 6 Pa. Dist. Rep. 656; Caldwell v. Miller, 46 Pa. 233; Heath v. Walton, 9 Pa. Dist. Rep. 218; Hoedt v. Hoedt, 60 Pa. Superior Ct. 5." (Italics supplied.)

To the same effect see Herbein v. The Railroad Co., 9 Watts 272 (1840), and Blossom Products Co. v. National Underwear Co., 29 D. & C. 581 (1937), affirmed without discussion of costs in 325 Pa. 383.

Thus we find that the rule is well established in Pennsylvania that the right to recover costs is purely statutory.

Furthermore, it is a well-established principle of law that statutes enacted by the legislature are not applicable to the Commonwealth unless it is specifically named. See for example Baker et al. v. Kirschnek et al., 317 Pa. 225 (1935), wherein the court decided that the Commonwealth was not a "person" within the meaning of that word as used in an act prohibiting the sale of liquor. In Jones v. Tatham, 20 Pa. 398, 411 (1853), the court said:

"The general business of the legislative power is to establish laws for individuals, not for the sovereign; and, when the rights of the Commonwealth are to be transferred or affected, the intention must be plainly expressed or necessarily applied."

See also the following cases cited by the court below in the case of Baker et al. v. Kirschnek et al., supra: School Directors v. Carlisle Bank, 8 Watts 289 (1839); Commonwealth v. Real Estate Trust Co., 26 Pa. Superior Ct. 149 (1904); The County of Erie v. The City of Erie, 113 Pa. 360 (1886); Pittsburg v. Sterrett Subdistrict School, 204 Pa. 635 (1903).

As a result of these two well-established principles, (1) that costs are statutory, and (2) that the sovereign is not embraced within a statute unless specifically named, the courts have generally held "apart from statute, that costs are not recoverable from a state, in her own courts, whether she has brought suit as plaintiff or has properly been sued as defendant; or whether she is successful or defeated": 59 C. J. 332 §503.

This rule was adopted as to the Commonwealth of Pennsylvania in the early case of Commonwealth v. Yeakel, 1 Wood. 143 (1863), wherein the court said:

"In a general law passed in order to regulate the rights and duties of citizens, the sovereign is not embraced unless included in the express terms of the statute. Especially in questions like this, *the Commonwealth is not liable for costs except where so directed by act of Assembly* [italics supplied]; and this exemption is founded on the sovereign character of the state, amenable to no juris-

diction and subject to no process. *Comth* v. *Co. Commrs*, 8 S. & R. 151."

This rule was followed in the able decision of President Judge Hargest of the Court of Common Pleas of Dauphin County in Puloka v. Commonwealth et al., 28 D. & C. 367 (1936).

The appellate courts of other States have almost unanimously adopted this rule in the following cases: State v. Pullman-Standard Car Mfg. Co., 179 So. 541 (Ala. 1938) ; The People v. One Plymouth Sedan, etc., 21 Cal. A. (2d), 715, 69 P.(2d) 1011 (1937) ; State of Colorado v. La Plata River & Cherry Creek Ditch Co. et al., 101 Col. 368, 73 P.(2d) 997 (1937) ; State of Connecticut ex rel. v. Bartholomew et al., 111 Conn. 427, 150 Atl. 308 (1930) ; City of Idaho Falls, etc., v. Pfost, etc., et al., 53 Idaho 247, 23 P.(2d) 245 (1933) ; Galpin v. City of Chicago, 249 Ill. 554, 94 N. E. 961 (1911) ; (in principle) Ex parte Fitzpatrick, etc., 171 Ind. 557, 86 N. E. 964 (1909) ; James, etc., et al. v. Walker, 148 Ky. 73, 146 S. W. 21 (1912) ; Natalbany Lumber Co., Ltd., v. Louisiana Tax Comm., 175 La. 110, 143 So. 20 (1932) ; The States of Maine & Massachusetts v. Webster et al., 8 Greenl. 105 (Me., 1831) ; The State of Maryland v. Williams, etc., 101 Md. 529, 61 Atl. 297 (1905) ; Borgess Hospital v. Union Industrial Trust & Savings Bank, 265 Mich. 156, 251 N. W. 363 (1933) ; State v. Chadwick et al., 133 Minn. 117, 158 N. W. 637 (1916) ; Levine, etc., v. State Board of Registration, etc., 14 N. J. Misc. 738, 186 Atl. 814 (1936) ; State v. Kinne, 41 N. H. 238 (1860) ; State ex rel. v. Johnson, etc., 165 Okla. 190, 25 P.(2d) 659 (1933) ; State of Oregon v. Ganong, 93 Ore. 440, 184 Pac. 233 (1939) ; Pope et al. v. State et al., 56 S. W. (2d) 492 (Tex. Civ. App. (1933) ) ; State of Vermont v. Bradford Savings Bank & Trust Co., etc., 71 Vt. 234, 44 Atl. 349 (1899) ; Washington Recorder Publishing Co. v. Ernst, 91 P.(2d) 718 (1939) ; In re Sletto's Estate, 224 Wis. 178, 272 N. W. 42 (1937).

The several infrequent decisions arriving at the opposite conclusion are not sufficient in our opinion to change the rule so well established by the cases cited above and many other decisions of the appellate courts.

Of course, the foregoing cases pertain to the right to assess costs against a sovereign State in its own courts. A different rule has been followed from time to time where the State appears as a litigant in the Federal courts.

Referring now to the Pennsylvania statutes governing costs, we find that the statutory right of plaintiffs to obtain costs goes back to the Statute of Gloucester, obviously at a time when the sovereign king could not be sued. Similarly, the statute which enabled defendants to recover costs where plaintiffs were nonsuited was expressly rendered inapplicable to those cases in which the sovereign or his representative was the plaintiff.

In Puloka v. Commonwealth et al., supra, p. 373, President Judge Hargest said:

*"Costs are peculiarly the creature of statutes.* No costs were allowed a litigant at common law. As far back as the year 1278, it took the Statute of Gloucester, 6 Edw. 7, c. 1, to impose costs in certain cases. Then followed the Statute of 3 Hen. VII, c. 10 (1486), awarding costs to plaintiff where defendant issued a writ of error; and the Statute of 23 Hen. VIII, c. 15 (1531), which imposed costs in nonsuits upon plaintiff. Then followed the Statute of 24 Hen. VIII, c. 8 (1532), which provided that the sovereign should not be liable to costs in cases under the Act of 23 Hen. VIII, just referred to. *All of these early English statutes were in force in Pennsylvania*: 3 Binn. 601, 616, and 618. The Act of 4 James I, c. 3 (1606), awarded defendants costs in the same kind of cases where plaintiff was entitled thereto. See Wadlinger on Costs, chapter 1; Black's Appeal, 106 Pa. 344." (Italics supplied.)

Clearly, there is no common-law statute giving the right to obtain costs against the sovereign.

Present Pennsylvania statutes concerning costs generally are the Act of May 19, 1897, P. L. 67, sec. 21, 12 PS

§1160, which provides that costs in any appeal cause "shall be paid by the party finally losing the cause"; the Act of April 15, 1907, P. L. 83, 12 PS §1193, as amended, providing that in appealed cases the winning party may collect as part of the costs the expense of printing paper books; and the Act of June 5, 1913, P. L. 422, 12 PS §§1194, 1195, providing for the payment of costs by the losing party in the event that the judgment of the lower court is reversed. These statutes do not name the Commonwealth and are, therefore, not applicable to the Commonwealth: Puloka v. Commonwealth et al., supra. Moreover, the statutes apply only to appellate court cases, and are not pertinent to the present inquiries.

Accordingly, the Commonwealth of Pennsylvania, acting through the Pennsylvania Liquor Control Board, is not liable for costs in any case under the foregoing statutes and decisions, unless the acts of assembly dealing with the particular cases involved specifically impose such costs upon the Commonwealth. We shall now examine the statutes concerning each inquiry presented by you.

1. Is the board liable for the payment of the record costs in cases where its orders on appeals have been reversed:

(a) If directed by the court to pay the costs?

(b) If not directed by the court to pay the costs?

Appeals from the refusal of the Pennsylvania Liquor Control Board to grant a liquor license are governed by section 404 of the Pennsylvania Liquor Control Act of November 29, 1933, P. L. 15, as last amended by the Act of June 16, 1937, P. L. 1762, 47 PS §744-404. That section provides that any person aggrieved by the refusal of the board to issue or renew a liquor license may appeal to the court of quarter sessions of the county in which the establishment is located. The section then provides:

"The court shall hear the application de novo at such time as it shall fix, of which notice shall be given to the board. The court shall either sustain the refusal of the

board or order the issuance of the license to the applicant. There shall be no further appeal. Any appeal shall act as a supersedeas, unless, upon sufficient cause shown, the court shall determine otherwise."

A similar provision is contained in section 7 of the Beverage License Law of May 3, 1933, P. L. 252, as amended by the Act of June 16, 1937, P. L. 1827, 47 PS §90, and the above-quoted portion from the Pennsylvania Liquor Control Act is contained verbatim in the Beverage License Law.

Section 410 of the Pennsylvania Liquor Control Act, supra, deals with the revocation of liquor licenses and provides as follows concerning appeals:

"In the event the person whose license was suspended or revoked by the board shall feel aggrieved by the action of the board, he shall have the right to appeal to the court of quarter sessions in the same manner as herein provided for appeals from refusals to grant licenses. Such appeal shall act as a supersedeas, unless, upon sufficient cause shown, the court shall determine otherwise."

Section 13 of the Beverage License Law, supra, contains the same provision for appeal from revocation of licenses, but is silent as to the effect of the appeal as a supersedeas. Incidentally, section 13 of the Beverage License Law, prior to the 1937 amendment, provided that "The court shall assess or remit the costs in its discretion." It is significant that this provision has been stricken out of the Beverage License Law, as reënacted and amended in 1937.

Both the Pennsylvania Liquor Control Act and the Beverage License Law are silent as to the payment of costs in appeals from orders of the board revoking or refusing to grant licenses. From the authorities herein cited, it is clear that the Commonwealth cannot be held responsible for costs in the absence of an express statutory direction. Consequently, in cases where the orders of the board have been reversed on appeal, the board is

not liable for the record costs, irrespective of whether the court has directed the board to pay such costs.

2. Is the board liable for record costs in cases wherein the board's orders on appeal have been affirmed, if directed by the court to pay the costs?

The answer to your first inquiry likewise is an answer to the second inquiry. If the board cannot be compelled to pay costs when its orders are reversed, a fortiori the board cannot be compelled to pay costs by the court when its orders on appeal have been affirmed.

3. Is the board liable for costs in cases instituted by it for the forfeiture of property used in violation of the liquor law:

(a) If the court orders the property forfeited and directs the board to pay the costs?

(b) If the court dismisses the petition of the board and directs it to pay the costs?

Proceedings for the forfeiture of property are authorized in section 611 of the Pennsylvania Liquor Control Act, supra. That section gives the court of quarter sessions power to direct the forfeiture of property upon petition, and to order such property returned to the claimant or turned over to the board. The section is completely silent on the matter of costs.

In view of this silence and the foregoing reasoning, it is clear that the board is not liable for costs in cases instituted by it for the forfeiture of property used in violation of the liquor laws, regardless of whether the Commonwealth wins or loses the case, and regardless of whether or not the court directs the board to pay such costs.

4. Is the Commonwealth liable for costs in cases instituted by it for padlocking premises used in violation of the liquor law:

(a) If the court orders the premises padlocked and directs the Commonwealth to pay the costs?

(b) If the court dismisses the proceeding and directs the Commonwealth to pay the costs?

Padlock proceedings are now instituted under section 608(b) of the Pennsylvania Liquor Control Act, pertaining to the abatement of nuisances. Such proceedings are to be brought and tried "as an action in equity . . . in any court having jurisdiction to hear and determine equity cases . . . ". The court is given authority to grant temporary or permanent relief, or to order that the place shall not be occupied for one year thereafter. No bond is required of the Commonwealth. Finally, the section permits the court to order the reoccupation of the property upon posting a bond conditioned, inter alia, upon the payment of "all fines, costs and damages that may be assessed for any violation of this act upon said property."

No authority is granted to the courts of equity to assess costs against the Commonwealth in padlock proceedings, irrespective of the outcome of such proceedings, and the board is not liable for any such costs.

In connection with the foregoing opinion, we have also examined the Act of July 18, 1935, P. L. 1316, 47 PS §744—907, which amends the Act of December 20, 1933, P. L. 89, appropriating moneys in the State Stores Fund for use by the Pennsylvania Liquor Control Board. It appears that the legislature has not made any appropriation for the payment of costs in cases involving the Liquor Control Board, with the possible exception of paragraph (h) of section 1, which appropriates money "For all other expenses of every kind and description necessary for the performance by the board of the aforesaid work."

This section is undoubtedly sufficient to authorize the payment of costs necessarily payable in advance to the prothonotary or clerk of court in any case commenced by the board. However, there is no room for any interpretation which would permit the payment of costs as they are commonly taxed against the losing party at the conclusion of a case.

Accordingly, you are advised that the Pennsylvania Liquor Control Board is not liable for the payment of

costs in cases arising on appeal or from forfeiture or pad-lock proceedings, irrespective of whether the Common-wealth is the winning or losing party, and irrespective of whether or not the court directs that the board pay such costs.